1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                          DISTRICT OF ARIZONA

10

11  Aerotec International, Inc.,          )

12              Plaintiff,                )      2:10-cv-00433 JWS

13       vs.                             )      ORDER AND OPINION

14  Honeywell International, Inc.,         )      [Re: Motion at Docket 153]

15              Defendant.                )

16

17                         **I.  MOTION PRESENTED**

18       At docket 153, Plaintiff Aerotec International, Inc. ("Aerotec") asks the court to

19  modify the protective order at docket 16 and unseal the materials relating to the

20  summary judgment proceedings in this case.  Defendant Honeywell International, Inc.

21  ("Honeywell") responds at docket 155.  Aerotec replies at docket 156.  Oral argument is

22  not requested and would not assist the court.

23                          **II.  BACKGROUND**

24       This in anti-trust case brought by Aerotec against Honeywell.  It concerns

25  competition in the repair market for auxiliary power units ("APUs").  APUs are small

26  engines for commercial aircraft which provide power for auxiliary functions such as on-

27  board electrical equipment and cabin air conditioning.   APUs need routine

28  maintenance, repair, and overhaul ("MRO") services.  When an airline does not perform

                                    -1-

its own MRO services, it solicits bids from MRO service providers such as Aerotec and Honeywell.

Aerotec's complaint against Honeywell alleged that Honeywell used its position as the predominant APU manufacturer and component parts supplier in an anticompetitive manner in the MRO service market, thereby violating antitrust laws and price discrimination laws.  Aerotec's first claim alleged that Honeywell engaged in illegal tying in violation of section 1 of the Sherman Act by using its power in the market for Honeywell APU component parts to tie sales of parts to the sale of Honeywell's MRO services.  Aerotec's second claim alleged that  Honeywell engaged in exclusive dealing and bundled pricing in violation of section 1 of the Sherman Act by using "exclusive dealing agreements with APU repair customers to foreclose a substantial portion of the APU repair market from rival repair providers" and imposing "a severe pricing penalty if customers do not commit to using Honeywell repair services."  Aerotec's third claim and forth claims for relief alleged that Honeywell engaged in monopolization and attempted monopolization in violation of section 2 of the Sherman Act by effectively refusing to deal with Aerotec, failing to provide Aerotec reasonable access to facilities that are essential for it to compete in the repair market, using bundled pricing, and requiring exclusive dealing arrangements with repair customers.  The fifth claim for relief alleged that Honeywell engaged in price discrimination in violation of the Robinson-Patman Act. Aerotec's sixth claim alleged Honeywell violated Arizona's antitrust laws, and its seventh through tenth claims alleged that Honeywell committed various torts under Arizona law.

The parties' cross motions for summary judgment supported by voluminous statements of fact were filed under seal pursuant to the protective order they had jointly proposed to the court,[1] and which the court had approved.[2]  The court granted

---

[1]Stipulation at doc. 14.

[2]Doc. 16.

Honeywell's motion for summary judgment and denied Aerotec's motion.  Aerotec

appealed.  In its motion at docket 153, Aerotec asks the court to unseal all the

documents relating to the summary judgment proceedings.

### III.  DISCUSSION

Honeywell does not oppose unsealing most of the sealed materials used in the

summary judgment proceedings:

> Honeywell agrees that this Court may unseal the vast majority of these
> materials, including the transcript of the hearing, the entirety of all the
> legal memoranda, all but two paragraphs of each Statement of Facts, and
> all but 18 of the approximately 280 exhibits submitted by the parties.[3]

The materials which Honeywell contends should remain sealed include exhibit 31 to

Aerotec's statement of facts and exhibits 17, 21, 34, 35, and 46 to Honeywell's

statement of facts which contain information about the pricing and terms of still

outstanding agreements and proposals between Honeywell and some of its airline

customers ("Contract/Proposal Exhibits").  Honeywell also argues that certain internal

Honeywell documents should remain sealed–specifically exhibits 34, 114, 125, 127,

128, 129, and 131 to Aerotec's statement of facts and exhibits 26, 38, 39, 41, and 45 to

Honeywell's statement of facts ("Internal Document Exhibits").  Finally, Honeywell

asserts that paragraphs 42 and 43 of Honeywell's statement of facts ("Paragraphs 42

and 43") should remain under seal.

Of course, federal courts are courts of public record.  The Ninth Circuit has said

that there is a strong presumption favoring public access to court records.[4]  However,

the presumption is not absolute.  It may be overcome by compelling reasons favoring

non-disclosure.[5]  The Ninth Circuit has long instructed trial courts confronting the need

to determine whether there are such compelling reasons to consider all relevant factors

---

[3]Doc. 155 at p. 1.

[4]*Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003).

[5]*Id.*

-3-

1   including, "the public interest in understanding the judicial process, and whether

2   disclosure of the material could result in improper use of the material for scandalous or

3   libelous purposes or infringement upon trade secrets."[6]  Moreover, the mere fact that

4   the materials at issue have been subject to a protective order is of no significance after

5   they have been used to support dispositive motions.  At that point they become more

6   than the mere results of discovery so that their continued non-disclosure depends not

7   on the "good cause" required for the initial protective order, but on the establishment of

8   compelling reasons for non-disclosure.[7]  Here, as the proponent of non-disclosure,

9   Honeywell bears the burden of establishing the compelling reasons.[8]  If Honeywell

10  does not demonstrate compelling reasons, then the default setting–that is allowing

11  public access to the materials–applies.[9]

12      **A. Contract/Proposal Exhibits**

13      Honeywell contends that the Contract/Proposal Exhibits contain "detailed, non-

14  public pricing information," which if publicly disclosed could be used for improper

15  purposes because it could be used by Honeywell's competitors seeking to "negotiate

16  similar agreements."[10]  Honeywell also equates the pricing information with a "trade

17  secret."  To support its position, Honeywell relies on the affidavit of an employee,

18  Robert Buddecke.[11]  Aerotec argues that there are problems with Honeywell's reliance

19  on Buddecke's affidavit.  To begin with Aerotec argues that it is doubtful that he has

20  sufficient personal knowledge to support his assertions with respect to the

21

22      [6]*Id.* (quoting *Hagestad v. Tragesser*, 49 F. 3d 1430, 1434 (9th Cir. 1995) in turn quoting

23  *EEOC v. Erection Co., Inc.*, 900 F.2d 168, 170 (9th Cir. 1990)).

24      [7]*Id.*, 331 F.3d at 1135-36.

25      [8]*Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1181-82  (9th Cir. 2006).

26      [9]*Id.*, 447 F.3d at 1182.

27      [10]Doc. 155 at pp. 3-4.

28      [11]Doc. 155-1.

1  Contract/Proposal Exhibits, because his deposition testimony shows that he has had

2  little to do with Honeywell's APU business since some time in 2010.[12]  However, an

3  examination of the Contract/Proposal Exhibits shows they were all executed before

4  Buddeke transitioned away from the APU area.  Exhibit 31 to Aerotec's statement of

5  facts was signed on October 20, 2006, and Exhibits 34, 35, and 46 to Honeywell's

6  statement of facts are all documents from 2009.

7      Aerotec also argues that Buddecke's affidavit is too conclusory to satisfy

8  Honeywell's obligation to provide compelling reasons for non-disclosure of the

9  Contract/Proposal Exhibits.  This argument has merit.  Buddecke asserts that disclosure

10 of the pricing and related financial information in the Contract/Proposal Exhibits "would

11 be extremely valuable" to Honeywell's competitors.  Each of the subject documents is

12 lengthy and complicated.  Yet, the affidavit does not identify the particular provisions

13 whose disclosure would harm Honeywell's competitive position, nor does it explain how

14 that harm would arise.  It is not for the court to comb through the documents and then

15 advance its own conjecture as to which provisions would be valuable to Honeywell's

16 competitors and further conjecture as to how their disclosure would be harmful to

17 Honeywell.  Finally, Honeywell makes no attempt to quantify the harm so that the court

18 could weigh the harm to Honeywell against the public's right to see materials which

19 relate to the disposition of this anti-trust case.  Honeywell has the burden to show

20 compelling reasons why the documents should remain shrouded in secrecy.  It has not

21 carried that burden.

22      **B.  Internal Document Exhibits**

23      As with the Contract/Proposal Exhibits, Honeywell relies on Buddecke's

24 declaration to establish the compelling reasons required to keep the Internal Document

25 Exhibits from public view.  The testimony in the declaration indicates that disclosure of

26 the Internal Document Exhibits could put Honeywell at a competitive disadvantage. The

27 ————————————————

28      [12]Doc. 156 at pp. 3-4 quoting from Buddecke's deposition.

1    declaration does not identify which of the numerous documents' disclosure actually

2    would result in significant harm to Honeywell.   Buddecke treats this large array of

3    documents as fungible.   Moreover, he does not point to any particular provision in any

4    of the documents which would be a source of harm to Honeywell, much less offer an

5    explanation of  how Honeywell would be disadvantaged.   Given the nature of some of

6    the material in the Internal Document Exhibits, the court could speculate that disclosure

7    would aid Honeywell's competitors, but the court's conjecture is only that, conjecture.

8    The business in which Aerotec and Honeywell compete is a complex one.   The court

9    cannot independently evaluate the significance of the Internal Document Exhibits in that

10   context.   It is Honeywell's burden to show compelling reasons for not disclosing the

11   Internal Document Exhibits.   It has not done so.

12          **C.  Paragraphs 42 and 43**

13          Buddecke's declaration asserts generally that disclosure of Paragraphs 42 and

14   43 could be used by Honeywell's competitors to put Honeywell at a competitive

15   disadvantage.   Paragraph 42 refers to the fact that Honeywell establishes standardized

16   regional pricing.   Use of that pricing allows its employees to bid on contracts promptly.

17   Paragraph 42 states that the standardized prices are substantially above cost.   It also

18   gives as an example the profits and returns on a contract made in 2009.   Buddecke

19   does not explain how disclosure of this information would put Honeywell at a

20   competitive disadvantage in 2014.   Even if the court could speculate that some harm to

21   Honeywell would flow from disclosing paragraph 42, it is for Honeywell to provide the

22   court with something concrete, not speculative.   The strong presumption favoring

23   disclosure has not been rebutted.   Paragraph 42 will be unsealed.

24          Paragraph 43 explains that a contract which does not use the standardized pre-

25   approved prices must receive further approval within Honeywell.   It explains generally

26   how Honeywell goes about giving further approval via a process that takes into account

27   various measures of profit and rates of return.   It then gives as an example information

28   concerning how the process applied in negotiating with Avianca in 2008 and early 2009.

1  Buddecke does not articulate how disclosure of the information in paragraph 43 would

2  specifically harm Honeywell.  The contract data disclosed in the paragraph relates to a

3  time period five years before the present.  Without more from Honeywell, the court

4  cannot conclude that disclosure of paragraph 43 would impair Honeywell's ability to

5  compete.  As with the other matters Honeywell wants to shield from public view,

6  Honeywell has not carried its burden to show the compelling reasons required for

7  continued secrecy.  Paragraph 43 will be unsealed.

8                                **IV.  CONCLUSION**

9       For the reasons set out above, the Protective Order at docket 16 is **MODIFIED**

10 such that Aerotec's motion to unseal at docket 153 is **GRANTED** as follows: (1) The

11 Clerk of Court will please unseal the materials filed at dockets 103, 104, 107, 108, 112,

12 113, 115, 116, 119, 120, 122, 123, 127, 128, 130, 131, 132, 134, 135, 137, 138, 140,

13 142, and 144.

14      DATED this 12th day of May 2014.

15

16                          _____
                                    /S/
17                          JOHN W. SEDWICK
                            UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28